IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FRANK BRYAN, INC., ) | |
| ) | Civil Action No. 13 - 363 |
| Plaintiff, ) | |
| ) | Chief Magistrate Judge Lisa Lenihan |
| v. ) | |
| ) | |
| CSX TRANSPORTATION, INC., ) | ECF No. 10 |
| ) | |
| Defendant. ) | |
| ) | |

## OPINION

LENIHAN, Chief Magistrate Judge

  Currently pending before the Court is Plaintiff's Motion for Remand (ECF No. 10). For the reasons set forth below, the Court will deny the motion.

I.  FACTUAL BACKGROUND & PROCEDURAL HISTORY

  On February 6, 2013, Plaintiff, Frank Bryan, Inc. ("Bryan"), instituted this action in the Court of Common Pleas of Allegheny County seeking equitable relief to enforce an easement appurtenant, and to obtain a decree directing Defendant, CSX Transportation, Inc. ("CSXT") to construct and maintain a private at-grade road crossing at either South 2nd or South 3rd Street in the City of Pittsburgh, to Plaintiff's adjacent property, which is landlocked and situated on the banks of the Monongahela River.[1] In addition, Plaintiff seeks damages as permitted under the

---

[1] For several decades, Pittsburgh Terminal Properties ("PTP") allowed Bryan employees to traverse a dirt road across the rear of the adjacent PTP property, adjacent to the Monongahela River, in order to access a public crossing over CSXT's tracks at South 4th Street. (Expert Report of Robert W. Halstead dated 5/20/10 ("Halstead Report") at 3, ECF No. 1-2 at 46.) However, in or around 2009, PTP began making renovations to its property and denied Bryan employees and its dump trucks further access to its private road. *Id.* This dispute is the subject

Railroad Act of 1849, 15 P.S. §4101 *et seq.* (Compl., Ad damnum cl., part b, ECF No. 1-2 at 24.)

On March 12, 2013, Defendant removed this action to federal court predicating removal jurisdiction on diversity of citizenship. In its notice of removal, Defendant points out that the complaint seeks nonmonetary relief (declaratory judgment) and unspecified damages under the Railroad Act. (Notice of Removal, ¶¶4, 18, 20.) Consequently, Defendant submits that it may assert the amount in controversy in the notice of removal, pursuant to 28 U.S.C. §1446(c)(2)(A)(i). Defendant maintains that construction and maintenance of a private at-grade crossing would far exceed $75,000, and thus, the jurisdictional amount has been met. (Notice of Removal, ¶19.)

In support of its notice of removal, Defendant has attached the Declaration of David R. Daniels, the Division Engineer of CSXT for the territory encompassing the land in question. According to Daniels, if CSXT is compelled to install and maintain a crossing, the following costs would be incurred:

| | |
|---|---|
| Installation of 24 foot, at-grade crossing | $ 28,800 |
| Approaches on each side of the crossing | 20,000 to 30,000 |
| Installation of signaling devices (including lights and gates) | 200,000 to 215,000 |
| Total Cost | $248,800 – 273,800 |

Daniels Decl. ¶¶9-13 (Ex. B to Notice of Removal, ECF No. 1-3). In addition, Daniels estimates the annual cost to maintain the crossing would be between $3,000 and $5,000. (*Id.* at ¶¶14-15.)

---

of a civil action filed at GD No. 09-007802 in the Court of Common Pleas, Allegheny County, by Plaintiff against Pittsburgh Terminal Properties ("PTP proceeding"). Counsel for the parties advised the Court at the 4/11/13 status conference that the PTP proceeding has been stayed to allow the instant action to proceed.

As to the damages under the Railroad Act of 1849, CSXT submits that damages are calculated by "the quality, quantity and value of said lands so taken or occupied or to be so taken or occupied," 15 P.S. §4141 (repealed 1978), and therefore, the amount in controversy exceeds $75,000. (Notice of Removal, ¶¶20-21.)

In response, Plaintiff filed a motion for remand (ECF No. 10), in which it disputes that the amount in controversy exceeds $75,000.  Plaintiff relies on two affidavits to show that (1) the installation of signaling devices is not required, and (2) the cost of a private at-grade crossing without signaling devices and maintenance thereof would be $65,325, and therefore, the jurisdictional threshold has not been met.  Defendant filed a Response in Opposition to the Motion for Remand (ECF No. 13), to which Plaintiff filed a Reply (ECF No. 14).  Oral argument was held on the motion for remand on April 11, 2013.  Thus, the motion is ripe for disposition.

## II.     LEGAL STANDARD – REMOVAL & MOTION TO REMAND

Section 1441 of Title 28, United States Code, governs the removal of a case to federal court.  Generally, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . , to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. §1441(a).  "The removal statutes 'are to be strictly construed against removal and all doubts should be resolved in favor of remand.'" *Boyer v. Snap-On Tools Corp.,* 913 F.2d 108, 111 (3d Cir. 1990) (quoting *Steel Valley Auth. v. Union Switch & Signal Div.,* 809 F.2d 1006, 1010 (3d Cir. 1987) (other citations omitted)); *Sikirica v. Nationwide Ins. Co.,* 416 F.3d 214, 219 (3d Cir. 2005).  Where a motion for remand is filed, the defendant has the burden

of proving that removal was proper. *Sikirica,* 416 F.3d at 219 (citing *Samuel-Bassett v. KIA Motors Am., Inc.,* 357 F.3d 392, 396 (3d Cir. 2004)).

### III.  DISCUSSION

CSXT has predicated removal jurisdiction on diversity of citizenship under 28 U.S.C. §1332.  The parties dispute only whether the jurisdictional amount has been satisfied.

The Federal Courts Jurisdiction and Venue Clarification Act of 2011, H.R. 394, P.L. 112-63, clarified the standard for satisfying the amount in controversy when a case is removed to federal court.  Codified at 28 U.S.C. §1446(c)(2), the new provision states:

> (2) If removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, except that--
>
> (A) the notice of removal may assert the amount in controversy if the initial pleading seeks--
>
> (i) nonmonetary relief; or
>
> (ii) a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded; and
>
> (B) removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a).

Preponderance of the evidence means "'proof to a reasonable probability that jurisdiction exists.'" *Frederico v. Home Depot,* 507 F.3d 188, 196 n. 6 (3d Cir. 2007) (quoting *Shaw v. Dow Brands, Inc.,* 994 F.2d 364, 366 (7th Cir. 1993)).  In addition, it is clearly established that the amount in controversy is determined from the face of the complaint at the time of removal. *Werwinski v. Ford Motor Co.,* 286 F.3d 661, 666 (3d Cir. 2002) (citation omitted).  Where the

complaint fails to assert a monetary amount associated with the requested relief, the court may look to the notice of removal to determine the amount in controversy. *Frederico,* 507 F.3d at 196 (citing *Morgan v. Gay,* 471 F.3d 469, 474 (3d Cir. 2006)). "The court must measure the amount 'not ... by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated.'" *Werwinski,* 286 F.3d at 666 (quoting *Angus v. Shiley, Inc.,* 989 F.2d 142, 146 (3d Cir. 1993)). With these precepts in mind, the Court turns now to the parties' arguments.

In support of its motion for remand, Plaintiff contests Daniels' assertions regarding the cost of the signaling devices and their annual maintenance costs, as being without substance or merit. Bryan argues that since it is seeking a private crossing, CSXT is not required by either federal or state law to install crossing signal devices or to assume the maintenance cost for those signal devices at a private at-grade crossing. In support, Plaintiff provides the affidavits of two experts, Robert Halstead and Dennis Percy. Mr. Halstead reviewed the declaration of Mr. Daniels and noted Daniels' opinion that the proposed crossing would require the installation of signal devices which would include lights and gates costing approximately $200,000 to $215,000. (Halstead Aff., ¶12, ECF No. 10-2.) In his affidavit, Halstead stated that there are no federal or Pennsylvania requirements which mandate that private at-grade crossings be signaled, and therefore, Mr. Daniels unjustifiably inflated the cost of the private at-grade crossing sought to be installed by Bryan. (Id. at ¶¶14-16.) Mr. Percy states in his affidavit that he estimates the cost for the installation of 24-foot wide, at-grade crossing at South 2nd or South 3rd Streets to be approximately $29,974, plus $29,320 for the asphalt approaches to the crossing, and the present value of periodic repair of crossing surface over a 20-year life span at $6,031, for a total of $65,325. (Percy Aff., ¶¶9-11, 13, ECF No. 10-1.) Based on these affidavits, Plaintiff submits

that the cost of the crossing is under the jurisdictional threshold, and therefore, diversity jurisdiction does not exist.

Although at first blush Plaintiff's argument appears to have some appeal, it is clear after reviewing Defendant's response and Notice of Removal that remand is not warranted here. Plaintiff's argument suffers from two infirmities: (1) It improperly focuses on the lack of federal or state regulations mandating active warning devices at a private crossing, and (2) it ignores the factual averments pled and relief requested in its Complaint.

As Defendant points out in its opposition to remand, Plaintiff relies on an affidavit by Robert Halstead in support of remand which appears at odds with his export report attached to the Complaint,[2] as well as his prior sworn testimony in a related proceeding.[3] Defendant argues that it is well established that the amount in controversy is measured at the time of removal, and

---

[2] Halstead was retained by Bryan to render an expert opinion as to the safety-related ramifications of constructing a new private at-grade crossing by extending the present South 2nd Street over the CSXT tracks and directly into the Bryan property, in the PTP proceeding. (Halstead Report at 3.) Halstead opined that the proposed crossing at South 2nd Street met enough of the safety criteria delineated in the Federal Highway Administration's Railroad-Highway Grade Crossing Handbook (2007) for him to recommend that active warning devices consisting of flashers, gates, and two bells be installed at the proposed crossing. (*Id.* at 15, ECF No. 1-2 at 58.) He estimated that the installed cost of the crossing surface and such warning devices would likely be in the neighborhood of $150,000 to $200,000. (*Id.*) He further opined that federally-required maintenance and periodic testing of the active warning devices will likely cost an additional $4,000 to $6,000 per year. (*Id.*)

[3] At a Board of Viewers Hearing in the PTP proceeding, Halstead testified that in his expert opinion, given the multiple tracks and sight obstruction at the proposed 2nd Street crossing, he strongly recommended that the crossing, if constructed, be provided with active warning devices consisting of automatic flashers and gates. (Hrg. Tr. at 102-03, ECF No. 13-1 at 3-4.) Halstead estimated that the cost of installing state of the art crossing surface and warning devices would run between $150,000 to $200,000. (*Id.* at 103.) He further opined that a less than state of the art crossing surface and warning devices could not be constructed for less than $100,000. (*Id.* at 107.) On top of that, annual maintenance costs would run on average between $4,000 and $6,000 for a double track crossing like the one contemplated here. (*Id.*)

therefore, Plaintiff's after-the-fact attempt to rewrite the Complaint with Halstead's subsequent contradictory affidavit is of no moment. Likewise, Defendant argues that Plaintiff's after-the-fact assertion that the grade crossing warning devices are not required by federal or state law misses the point. Defendant submits that regardless of whether these devices are <u>required</u> by law, Plaintiff cannot deny that it <u>specifically asks</u> for them in the Complaint (Compl. ¶¶60, 63).

Here, the documents that existed at the time of removal are the Complaint and attachments thereto, which show anticipated costs well in excess of the $75,000 threshold for diversity jurisdiction. In the Complaint, Plaintiff avers that a "railroad crossing at South 2nd Street with warning devices, active flashers and gates is safer than the existing railroad crossing at South 4th Street." (Compl. ¶60, ECF No. 1-2.) Plaintiff makes the same assertion as to the proposed railroad crossing at South 3rd Street. (Compl. ¶63.) Thus, Plaintiff's own Complaint and the expert report attached thereto makes a case for installing a railroad crossing with active warning devices at an estimated cost of $150,000 to $200,000, plus annual maintenance costs of $4,000 to $6,000.

Plaintiff's contention that the value and cost of the crossing and signal devices cannot be considered in determining the amount in controversy is misplaced. "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 347 (1977) (citations omitted). Even when valued from the viewpoint of the Plaintiff, *Columbia Gas Transmission Corp. v. Tarbuck,* 62 F.3d 538, 539 (3d Cir. 1995), the Court finds that the jurisdictional amount exceeds $75,000. Here, the object of the litigation is to obtain a decree ordering Defendant to install a private at-grade crossing at either South 2nd Street or South 3rd Street. (Compl. ¶7 & Ad damnum cl., part a.) In support, Plaintiff specifically avers

that a private at-grade crossing at South 2nd and South 3rd Streets "with warning devices, active flashers and gates is safer than the existing railroad crossing at South 4th Street." (Compl., ¶¶60, 63.)  Therefore, the value of installing the object of the litigation is indeed relevant to determining the amount in controversy.

Even if the Court takes into account the affidavits submitted by Plaintiff in support of its motion for remand, it appears that the amount in controversy requirement would still be met.  As CSXT points out, in addition to the estimated cost of $65,325 provided by Mr. Percy, Plaintiff has asked for all damages permitted under the Railroad Act of 1849. 15 P.S. §4101 *et seq.* (repealed 1978).[4]  Section 4101 provides that if the railroad company refuses to construct a necessary causeway[5] over a landowner's property, the railroad company "shall be liable to pay any person aggrieved thereby, all damages sustained by such person in consequence of such . . . refusal; such damages to be assessed and ascertained in the same manner as provided in [Section 4141]." 15 P.S. §4101.  The Pennsylvania Supreme Court has held that the "measure of damages [under Section 4101 is] the inconvenience plaintiff suffered in the enjoyment of his premises, arising out of a failure to construct a causeway[.]" *Port v. Huntington & Broad Top R.R.*, 168

---

[4] Plaintiff submits that the Railroad Act was repealed by the Act of July 1, 1978, P.L. 598 No. 11632, however, the Pennsylvania courts have consistently applied the provisions of the Act to events which occurred prior to repeal and which would result in a claim(s) under the Act. *See* Compl., ¶90.  The Court acknowledges that several courts have noted the continued validity of the Railroad Act after its repeal in those situations. *See, e.g., Estate of Spickler v. Cnty. of Lancaster Bd. of Comm'rs,* 577 A.2d 923 (Pa. Super. Ct. 1990); *Buffalo Twp. v. Jones,* 778 A.2d 1269 (Pa. Commw. Ct. 2001); *Kapp v. Norfolk S. Rwy. Co.,* 350 F.Supp. 2d 597 (M.D.Pa. 2004).

[5] A causeway, for purposes of Section 4101, refers to "a means, a way, graded so as to make it convenient . . . to make a passage across the railroad from one side to the other[.]" *Port v. Huntington & Broad Top R.R.,* 168 Pa. 19, 21, 31 A. 950 (1895).

Pa. 19, 28-29, 31 A. 950, 952 (1895).[6] In its Compliant, Plaintiff alleges that in connection with and essential to its business, it operates a ready mix concrete plant on a portion of its real property that is landlocked and without any means of access, ingress, egress or regress due to the existence of the CSXT tracks and an inability to use an existing public crossing at South 4th Street. (Compl. ¶¶5-6.) Given the alleged importance of the crossing to Plaintiff's business operations, it is more likely than not that the damages recoverable under the Railroad Act would exceed $10,000, and when combined with the estimated cost of installing and maintaining a crossing without the active warning devices, would satisfy the jurisdictional amount of $75,000.[7] Moreover, if Plaintiff is able to prove that it has a valid easement appurtenant, it is unlikely Defendant would agree to install a private at-grade crossing at South 2nd Street without the active warning devices, given the safety concerns of high usage by heavy trucks, inadequate sight distance, and the existence of multiple tracks, as noted by Plaintiff's own expert.

---

[6] The Court notes that this is not the standard cited by Defendant in its Notice of Removal. CSXT mistakenly cites to the measure of damages provided in Section 4141 for eminent domain proceedings. This confusion is understandable as Section 4101 refers to Section 4141 in the clause regarding damages. However, a close examination of the pertinent language in Section 4101 reveals that the damages recoverable in Section 4101 are to be *assessed and ascertained in the same manner as provided in Section 4141*, i.e., by a board of viewers appointed by the court of common pleas of the proper county. Section 4101 does not state that the *type* of damages recoverable is the same as that provided in Section 4141. This is not fatal, however, to Defendant's argument. When the Court applies the correct legal standard, it reaches the same conclusion.

[7] Indeed, Plaintiff's witness, Mr. Halstead, testified at the Board of Viewers hearing that even a less than state of the art crossing surface and warning devices could not be constructed for less than $100,000. (Hrg. Tr. at 107.)

Thus, for these reasons, the Court finds that Defendant has proved, to a reasonable probability, that the amount in controversy exceeds $75,000. Accordingly, the motion for remand will be denied.[8]

### IV.   CONCLUSION

For the reasons set forth above, the Court will deny Plaintiff's Motion for Remand (ECF No. 10). An appropriate order will follow.

Dated:   April 15, 2013                                    BY THE COURT:

_____
LISA PUPO LENIHAN
Chief United States Magistrate Judge

cc:     All Counsel of Record
        *Via Electronic Mail*

---

[8] Because the Court is denying the motion for remand, Plaintiff's request for attorneys' fees is moot.